IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE** | : | Case No. |
| | : | |
| Plaintiff, | : | |
| | : | Judge |
| v. | : | |
| **DENISA BASSETT**, et al | : | |
| | : | Magistrate Judge |
| Defendants. | : | |
| | : | |

## DECLARATION OF JOHN DOE

I, John Doe, being of sound mind and with personal knowledge of the facts, do make this declaration pursuant to 28 U.S.C. §1746(2), under penalty of perjury:

1. I am currently 50 years old. I started dating Jane Doe at the age of nineteen, and we were married at the age of twenty-four. Jane and I have a fourteen-year-old son. I currently live in Springfield Township, which is located in Hamilton County. Jane and our son live in Forest Park, which is located in Hamilton County, in a house that has been the family home for eleven years.

2. In 2014, I pled guilty to two counts of gross sexual imposition. At the time, I was a high school teacher and intervention specialist. I helped students with behavioral challenges and special educational needs who were looking to go to college. The offenses involved one female 18-year-old who is unrelated to me. She was my student and captain of the school chess team that I oversaw.

3. I have no other criminal history.

4. I was sentenced to three years in prison. I am required to serve five years of post-release control ("PRC") and register as a sex offender for fifteen years.

5. During my incarceration, I was assigned a Sex Offender Risk Reduction Center ("SORRC") level of zero, which is the lowest on a scale of zero to five. My recidivism risk was so low that I was not ordered to complete comprehensive programming like other sex offenders.

6. My criminal proceedings were covered extensively by the media. The intense coverage almost destroyed our family, especially our son. I need to proceed as a John Doe to protect my son and my wife from any more media coverage. My wife could lose her job due to media exposure, and I also fear that additional media coverage could result in physical harm to her or our son.

7. Faith is very important to me and my family, especially during challenging times. Because of our faith, my wife and I resolved to keep our marriage strong during my incarceration.

8. During my incarceration, my wife and son visited me regularly. I was allowed to embrace my son when he visited me in prison.

9. I spoke with my wife and son by phone nearly every day over the three years. I also sent many letters to them.

10. During these calls home, I would talk to my son about his progress in school and about other areas of his life. I served as the mediator when my son disagreed with his mother and helped him with his mathematics homework. In my calls and letters to my family, I always expressed my love for them and frequently offered words of parental advice, wisdom and encouragement. Upon information and belief, my wife and son missed me greatly while I was in prison and eagerly looked forward to my return home.

11. As I prepared to return to the community, I completed an Adult Parole Authority (APA) form indicating where I would be living upon my release so that the address could be approved. I indicated in September 2017 that I intended to return to my house to live with my wife and son.

12. On that same day, I was informed that because I am a sex offender, I could not stay in a home with a minor, even if it was my own son. I was told to use a different address or I would be sent to a half-way house.

13. The APA informed me that I shall have "no contact" with minors without APA approval. I asked what "no contact" meant, but received no clarification about what "no contact" entailed. When I asked how I could see my son, I was told that my parole officer would help me with that once I was released. The APA did not ask me about my relationship with my son or otherwise seek any information from me before telling me of these conditions.

14. I was released from prison on December 10, 2017.

15. When I met with Parole Officer Bassett the first time, she informed that I cannot have any contact with my son, including by phone, mail, or email, nor can I even have his photograph. I asked Defendant Bassett what the process was to get family members approved. Defendant Bassett said she would have to talk to her supervisor about the process.

16. On December 17, 2017, my sister died. When I asked Parole Officer Bassett if I could attend the memorial services to pay my last respects, she told me that I did not have permission to attend if minors would be present. I was unable to go and say goodbye to my sister as a result.

17. I met with Defendant Bassett again the next month. I inquired once more about the process of applying for supervision to see my son. She replied, "I will get back to you on that, this comes from Columbus."

18. Recently, Officer Bassett informed me that I can apply for supervised visits in a controlled setting with my son, but a "trained and equipped" supervisor must be present to monitor the visit, at my own expense.

19. Money is very tight for me right now. I am living off retirement funds because I haven't been able to find work.

20. I asked if my brother, a licensed social worker, could be approved to supervise, but Defendant Bassett said no. She told me that the supervising adult has to be someone from the APA, and that I will have to apply every single time I want to see my son. Defendant Bassett then informed me that I still cannot live in my family home and am not allowed to have any physical contact with my son, even while supervised.

21. Defendant Bassett also informed me that I am prohibited from visiting the family home even when my son is not present.

22. To be able to see me, my wife must split her time between visiting me at the Springfield address and caring for our son at the Forest Park address. She has told me that she feels guilty spending nights away from our son, so she never stays the night at my house. Our marriage is greatly strained by this separation.

23. My wife and I love each other and she wants me to come home, but we have discussed the possibility of her divorcing me since I cannot live with her or help her raise our child for five years.

24. Since being released from prison in December, I have complied with the PRC conditions and have not had contact with minors or communicated with my son.

25. I am a trained teacher, but I am not allowed to help my son with his homework.

26. My son turned fourteen on May 8, 2018, and I could not even call him to wish him a happy birthday or send him a letter or card.

27. My son is experiencing anxiety and suffering academically in my absence.

28. I have never abused my son and am not a risk to him. I love him and want to be the best father I can be. If these restrictions remain in effect during the entire period of my PRC, I will miss

4

the opportunity to raise my child. I also want to be the husband that my wife deserves. I fear that the current strain and burden will become so overwhelming that our marriage will be destroyed.

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
JOHN DOE